**MAUGAOTEGA SAVANE and ALAIMANU KILIONA LEANO,**
**for themselves and on behalf of the MAUGAOTEGA FAMILY,**
**Plaintiffs,**

**v.**

**AGASIVA MUA, Defendant.**

High Court of American Samoa
Land and Titles Division

LT No. 12-04

February 28, 2005

Before RICHMOND, Associate Justice; SAGAPOLUTELE, Associate Judge; and MAMEA, Associate Judge.

Counsel: For Plaintiffs, Robert K. Maez
 For Defendants, Arthur Ripley, Jr.

## OPINION AND ORDER

Plaintiffs Maugaotega Savane ("Maugaotega") and Alaimanu Kiliona Leano ("Alaimanu"), for themselves and on behalf of the Maugaotega family, brought this action for injunctive relief, seeking to prevent Defendant Agasiva Mua ("Agasiva"), and members of the Agasiva family and his other representatives, from occupying, destroying trees, cultivating, and otherwise trespassing on land in the Village of Amaluia, claimed to be the Maugaotega family's communal land, as well as damages for past trespasses.

### The Issue and Holding

The fundamental issue is whether the Maugaotega family or the Agasiva family owns the land in question. We hold that the land is the Agasiva family's communal land.

### Discussion

Maugaotega and Alaimanu allege that Agasiva and other members of his family trespassed on two parcels of the Maugaotega family's communal land called "Sinamano`o" and "Faleofe" (together "the land"). Agasiva recently returned to American Samoa after an extended absence and became the *sa`o* of the Agasiva family. A strained relationship developed between him and Alaimanu, a Maugaotega family member and long-term resident on the land. When Agasiva decided and began to clear for agricultural development two relatively small areas, some five acres each, within the land on the mountainside above the village center, Alaimanu enlisted the support of Maugaotega, the *sa`o* of the Maugaotega family, to challenge Agasiva and assert with this action title to the entire land in the Maugaotega family.

Agasiva asserts that both parcels of the land are the Agasiva family's communal land called "Masinaafiafi" and "Afutaoto." It is not entirely clear from the evidence that the land each family claims by distinct names are precisely identical parcels. The parties have not provided any surveys to clarify this point. It is sufficiently clear for purposes of this action, however, that "Sinamano'o" and "Masinaafiafi" are substantially identical areas, and likewise are "Faleofe" and "Afutaoto." It is abundantly clear that the land each family claims is entirely within the Village of Amaluia.

Members of both the Agasiva and Maugaotega families presently occupy and use certain portions of the land. Both sides provided testimony of past communications and other transactions affecting the land, within each of two families and between the two families, as pertinent to the ownership issue. In some instances, each side presented contradictory testimony regarding the same transaction. While this self-serving evidence tends to support the claims of each side, we do not find any of it, standing alone, sufficiently persuasive for purposes of determining the ultimate title issue in either family's favor by a preponderance of evidence. Under such circumstances, we would ordinarily evaluate the credibility of the witnesses to resolve the issue. To this end, both sides vigorously questioned the integrity of opposing witnesses. However, in this case, it is unnecessary to, and we will not, further detail these transactions or analyze witness credence.

Other salient evidence provides the persuasive basis for resolving the title issue. This evidence is initially found in High Court case *Maugaotega v. Toilolo*, Case No. 8-1906. It is unclear whether that case actually went to judgment. No written judgment is in the file, and there is indication that Toilolo left town, so to speak, before the court reached the point of rendering judgment. On the other hand, the file contains a letter, dated September 30, 1907, about a year after the case was noticed for trial, by which the Chief Justice informed the apparent Agasiva titleholder that the court had decided that the Maugaotega family owned land called "Faliofe" or "Faleofi" and the Momosea family owned land called "Sinamano'o," and directed the Agasiva family to live elsewhere. It is not entirely clear, without surveys in evidence, that the land presently at issue is precisely the same land that was at issue in the Case No. 8-1906. However, for purposes of this discussion, the nearly identical names of the land clearly suggest that the Case No. 8-1906 and present actions involve the same land, at least in significant part.

Maugaotega and Alaimanu contend that the record in Case No. 8-1906, whether or not a judgment was entered, conclusively proves that the Maugaotega family owns communal land in Amaluia. However, the

record in Case No. 8-1906 implies that, even though the Maugaotega family occupied and used portions of the land, the Agasiva family also occupied and used the land in those earlier times. Clearly, despite the court's 1907 letter, both families have demonstrated historic occupancy and use of portions of the land from 1906 to the present time, a period of almost 100 years, and likely longer.

■ The Case No. 8-1906 decision, if any, does not have *res judicata* effect on the present action. That case certainly stands for the proposition that Toilolo, the defending party, did not own the land. However, the Agasiva titleholder and his family were not parties to Case No. 8-1906, and any decision in that case is not binding on the Agasiva family and the current Agasiva titleholder. Case No. 8-1906 does not legally impact, directly or indirectly, the Agasiva family's present claim to the title of the land.

■ The location of the land in Amaluia, however, is determinative of title issue. Amaluia is one of three adjacent villages that have historical ties. From east to west, the villages are Amaluia, Asili, and Afao. Maugaotega claims that the three sectors are really one village known as Faletolu, and that there is a Faletolu council in which the Maugaotega titleholder has the status and authority of the ranking high chief. We do not doubt that the three villages have cultural traditions that come into play when meetings involving all three entities together are convened. However, such occasions, even when they take place from time to time, do not change the fact that each of the three villages is a distinct entity— historically, culturally and legally. The Maugaotega title is appurtenant to Asili, not to Amaluia. As such, the title has *pule* (power and control) over the family's communal lands in Asili. To hold that the title also has inherent *pule* over land in Amaluia would disrupt Amaluia's traditional social order. Without a persuasively genuine evidentiary explanation, a title connected with land and the affairs of a particular village cannot simply be given expanded authority over land and the affairs of another village. *See, e.g., Faumuina v. Tautolo*, 4 A.S.R.3d 305 (Land & Titles Div. 2000) and 5 A.S.R.3d 262 (Land & Titles Div. 2001); *Tupuola v. Williams*, 4 A.S.R.3d 300 (Land & Titles Div. 2000), *aff'd, Williams v. Tupuola*, 6 A.S.R.3d 44 (App. Div. 2002).

## Conclusion

It is evident that members of the Maugaotega and Agasiva families have peacefully and for the most part harmoniously resided and otherwise occupied and used the land for almost 100 years, and probably longer. Unfortunately, given this historical background, Agasiva's plan to agriculturally develop relatively small areas within the land, coupled with

the ill will between Alaimanu and Agasiva, led to this action. We hope that the two families can settle their differences and restore their peaceful and harmonious relationship of the past incident to the land for many years to come. Nonetheless, we must determine the title issue presented for judicial resolution.

We conclude that the Maugaotega family does not, and on the evidence cannot, own communal land in Amaluia. As between the Maugaotega and Agasiva families, the land at issue is the Agasiva family's communal land. The holder of the Agasiva title, not the Maugaotega title, has the *pule* over the land. Maugaotega, Alaimanu, and the Maugaotega family's prayer for injunctive relief to prevent Agasiva from occupying and using the land and for consequential damages is therefore denied.

Judgment shall enter accordingly.

It is so ordered.

---

MAMEA, J., dissenting:

I respectfully dissent with the holding of the majority and would grant the Maugaotega family's prayer for injunctive relief. In denying the Maugaotega family claim of ownership to the disputed land, the majority concluded that the location of the land in Amaluia is determinative of the issue of title. The court based its reasoning on the principle that absent persuasive evidence, a title connected with land and the affairs of a particular village cannot be given authority over land and the affairs of another village. In light of the facts before the Court, I believe that the Maugaotega family has offered persuasive evidence that the disputed land is their communal property.

It is of course true that within the context of Samoan law and custom, the location of disputed land in another village is not alone determinative of ownership, and that individuals or families can own land in other villages. For example, under the Samoan tradition of *ifoga*, or atonement, this Court has noted that communal land of the family of a wrongdoer may be given as an expression of sorrow or apology and become the communal property of the victim's family. *Leota v. Faumuina*, 4 A.S.R.2d 11, 12 (App. Div. 1987). Such a transfer allows a village to exercise control over land in another village.

Additionally, and pertinent to the matter before us, this Court has observed that an American Samoan may acquire land in another village as either his individual property or as communally owned land on behalf of his family. *Seva`aetasi v. Fanene*, 9 A.S.R.2d 118, 121 (Lands and Titles Div. 1988). In *Seva`aetasi* the Court conceded that "[b]efore the coming of the United States government the structure of Samoan society was such that families of one village did not acquire land in other villages by original occupation . . . [but that] there are reported instances of acquisition of such land by gift." *Id.* The Court observed, however, that after the arrival of the United States government, anyone with at least fifty percent Samoan blood could acquire land for himself or his family in *any* village, not just the village in which his family or matai title resides, by gift, purchase, or original cultivation. *Id.* Recognizing, then, as does the majority, that the presumption that land within a particular village belongs to that village may be rebutted by a "persuasively genuine evidentiary explanation," the issue of ownership turns on the specific facts presented by the parties, and not merely on a general evaluation of the location of the land.

I find that Plaintiffs have offered persuasive evidence demonstrating that the Maugaotega family properly acquired the land in Amaluia through original cultivation. While I recognize that long occupancy of land by one family is not necessarily inconsistent with ownership by another family, so to do I take note that a pattern of settlement provides evidence of land ownership. *Leota*, 4 A.S.R.2d at 12; *Tuiasosopo v. Afoa*, 16 A.S.R.2d 90, 94 (Lands & Titles Div. 1990). In the current case, Plaintiffs have shown that the Maugaotega family has resided on and improved upon the land for the past 100 years or more. The land has been used as a Maugaotega family source for planting and harvesting crops since at least 1906. Kalala Leano, a Maugaotega family member, has been on the land since approximately 1949. Alaimanu Kiliona Leano was born on the land, built a home on it nearly 30 years ago, and continues to reside on it. Penehuro Leano built a house on the land in 2003 and continues to reside upon it. That the land has been continuously used by the Maugaotega family for both residential and agricultural purposes creates a pattern of settlement indicating Maugaotega family ownership.

It is true, as the majority observes, that the parties presented contradictory testimony as to whether the Maugaotega family owned the land, or whether they were merely allowed on it with Agasiva permission. Yet, in addition to the potentially "self serving" testimony of both parties, I observe, as does the majority, that the Chief Justice's September 30, 1907 letter, contained in the file of *Maugaotega v. Toilolo*, Case No. 8-1906, informed the Agasiva titleholder that the Maugaotega family owned what appears to be the same land, or a

significant part of it, in question today. While I agree that the letter has no binding effect on the present action, its contents tend to support the version of facts set forth by the Maugaotega family. In turn, by lending greater credibility to Plaintiffs evidence, the letter, coupled with witness testimony, provide a persuasively genuine evidentiary basis establishing Maugaotega family ownership of land in the village of Amaluia justifying injunctive relief.